UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8085
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

ERNESTO RAMIREZ-LUJAN,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
              Western District of Texas
_____

(October 23, 1992)


Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and WERLEIN,[*]
District Judge.

GARWOOD, Circuit Judge:

    Defendant-appellant, Ernesto Ramirez-Lujan (Ramirez), appeals his conviction for possession of marihuana with the intent to distribute. His sole challenge is to the admissibility of evidence on the grounds that it was seized after an illegal initial stop by a border patrol agent. Based on the circumstances surrounding the seizure, we find that the evidence was admissible under the good faith exception to the exclusionary rule and we affirm.

_____

[*]    District Judge of the Southern District of Texas, sitting by designation.

**Facts and Proceedings Below**

Wesley Coleman (Coleman) worked as an agent for the border patrol at the Desert Haven checkpoint, which is on Highway 62-180 about thirty-five miles from the Mexican border and twenty-five miles east of El Paso, Texas. About three blocks west of the checkpoint is a turnoff for Pinon Road. The checkpoint is well marked and can be seen from the Pinon Road turnoff. Pinon Road is a some thirty-five mile long unpaved road stretching from Highway 62-180 to Dell City, Texas.

Pinon Road is generally used as an access road for the few families that live there or for drug and alien smuggling. For nonlocals, it is a road to nowhere since only two ranches and a pipeline are within ten or twenty miles of the turnoff from Highway 62-180. Pinon Road is known for alien and drug smuggling because it allows people to proceed to Dell City, which has a reputation as a drug distribution center, from Mexico while avoiding border patrol checkpoints. It is impractical for a person acting lawfully to use Pinon Road to get to Dell City since there is a much faster paved highway via the checkpoint. The people who live or work in Dell City get there by going through the checkpoint; they do not use Pinon Road.

Coleman testified that he had some three years experience at this location, that he was familiar with the families who lived on Pinon Road within ten or twenty miles of the Highway 62-180 turnoff and that he recognized their cars and the cars of most of their employees. He added that Pinon Road is not used much by the Pinon Road residents or their workers around 6:30 in the morning.

2

Sometimes the local people using Pinon Road would drive past the Pinon Road turnoff to the checkpoint to check in with the border patrol before proceeding on Pinon Road. Coleman stated that he has a policy of stopping every car on Pinon Road that he does not recognize.

At 6:30 a.m. on October 10, 1991, Coleman observed Ramirez head east on Highway 62-180 and turn onto Pinon Road in a late 1970's model pickup truck, travelling a little fast on the dirt road. Coleman did not recognize this vehicle as one used by the ranchers or their guests. He decided to investigate.

The officer pursued Ramirez for about four miles. Though trailing closely, Coleman could not identify the license plate number because of the bumpy terrain. Coleman then turned on his red flashing lights and Ramirez pulled over. Ramirez presented a valid permanent resident alien's card. Ramirez appeared nervous and stated that the truck did not belong to him. Coleman told Ramirez to follow him to the checkpoint so he could verify Ramirez's immigration papers since the terrain precluded radio contact. At the checkpoint, the dog alerted that it smelled contraband and the truck was searched. The search revealed a false panel in the truck containing 308 pounds of marihuana.[1]

Ramirez filed a motion to suppress the fruits of this search, which was denied following an evidentiary hearing. Ramirez was convicted of knowingly and intentionally possessing over 100

---

[1]    The initial verification of Ramirez's documents suggested that the truck was stolen and that Ramirez was wanted. This information later proved false.

kilograms of marihuana with the intent to distribute in violation of 21 U.S.C. § 841 (a)(1). He was sentenced to sixty-three months' imprisonment and four years' supervised release.

## Discussion

Ramirez contends that because the stop of his truck violated the Fourth Amendment, the fruits of the stop should be suppressed and his conviction overturned. The United States contends, as it did below, that Coleman reasonably believed that Ramirez was attempting to avoid the border patrol checkpoint and that the evidence is admissible because the search was legal or because the search was justified by the good faith exception.

Normally the fruits of illegal searches and seizures are not admissible in the prosecution's case in chief under the exclusionary rule. However, the "good faith exception" to the exclusionary rule allows the admission of the fruits of some illegal stops. Under this doctrine we have held that "evidence is not to be suppressed . . . where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. De Leon-Reyna*, 930 F.2d 396, 400 (5th Cir. 1991) (en banc) (quoting *United States v. Williams*, 622 F.2d 830, 840 (5th Cir 1980), *cert. denied*, 101 S.Ct. 946 (1981)). *See also id*. at 402 (suppression inappropriate where "it would be objectively reasonable for an experienced officer, situated as was" the officer making the stop, "to conclude that there was adequate reasonable suspicion under the *Cortez* [*United States v. Cortez*, 101 S.Ct. 690 (1981)] standard and that it was hence lawful to stop the

4

vehicle.").

The issue on appeal is whether Coleman's initial stop of Ramirez meets either the constitutional test of reasonableness or the good faith exception so that the fruits of the search are admissible. The nature of the stop determines the level of justification required.

Border officers on roving patrol may stop a vehicle only if they are aware of specific articulable facts that create a reasonable suspicion that the vehicle contains illegal aliens or drugs. *United States v. Brignoni-Ponce*, 95 S.Ct. 2574, 2582 (1975) (aliens); *United States v. Cortez*, 101 S.Ct. 690, 697 (1981) (drugs and other criminal activity); *United States v. Lopez*, 911 F.2d 1006, 1009 (5th Cir. 1990). Factors weighed in a reasonable suspicion test include: 1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous experience with alien or drug smuggling in the area; 5) behavior of driver, including "obvious attempts to evade officers"; 6) appearance or behavior of passengers; 7) appearance of the vehicle; and 8) officer experience. *See Brignoni-Ponce*, 95 S.Ct. at 2582.

Border patrol officers may stop vehicles at checkpoints without reasonable suspicion. *United States v. Hasette*, 898 F.2d 994, 995 (5th Cir. 1990). Temporary stops without reasonable suspicion are also permitted in "u-turn" type situations where people are seen making u-turns or similar maneuvers that avoid their passing through visible border patrol checkpoints, because the maneuver is treated as tantamount to a stop at the checkpoint

5

itself. *Id*. While these cases do not require reasonable suspicion of criminal activity *as such*, they appear to be inferentially grounded on the assumption that a u-turn type maneuver within sight of the checkpoint being approached gives rise to the reasonable suspicion that it is taken to avoid going through the checkpoint.[2]

In *United States v. Casteneda*, 951 F.2d 44 (5th Cir. 1992), this Court upheld a stop on Welhausen Road, a gravel road notoriously used to avoid two border patrol checkpoints. In *Casteneda*, the officer smelled a faint odor of marihuana coming from the truck in front of him through the open window of his car. The panel said that but for the smell of drugs, the stop was not legal. *Id.* at 47 n.4.[3] The opinion notes that "[w]ithout the smell, nothing was unusual about Casteneda being on Welhausen Road." *Id*. at 47. So far as the opinion reflects, the officer did not testify that he was familiar with the vehicles that regularly used the road or that it was unusual for vehicles to be using the road at 8:00 p.m. While used to avoid checkpoints, the turnoff onto Welhausen Road could not be seen from the checkpoint and was not so close to the checkpoint that turning onto the road could be regarded as analogous to a u-turn. *See id.*

Although here there was no marihuana odor as in *Casteneda*, other circumstances in this case justify application of the *DeLeon-*

---

[2]     In *Hasette* the defendant, driving toward the checkpoint, turned off the road into the entrance of an oil field, left his truck, discovered the entrance gate was locked, returned to his vehicle, and drove back in the direction from which he had come.

[3]     *Casteneda* did not address the good faith exception of *DeLeon-Reyna*, presumably because it ultimately held the stop to have been legal.

*Reyna* good faith exception.  Unlike the situation in *Casteneda*, Coleman *could* reasonably conclude that it *was* unusual for Ramirez's truck to be on Pinon Road at that time.  Coleman testified that he knew the truck did not belong to a Pinon Road resident or to one of their employees and that it was unusual for this truck to be on Pinon Road at this time.  Also, the Pinon Road turnoff was so close to the checkpoint that an agent could reasonably believe that a truck, on seeing the checkpoint, turned off the road with the intent to avoid the checkpoint.  The close proximity of Pinon Road to the border and the checkpoint, the notoriety of the road's use for illegal activity and to avoid the checkpoint, Coleman's knowledge of the normal traffic on Pinon Road, *especially* at 6:30 a.m., and the fact that Pinon Road is basically a road to nowhere, all generated Coleman's good faith belief that Ramirez was attempting to avoid the checkpoint and that the stop was legally based on the requisite reasonable suspicion.  Under the *Brignoni-Ponce* criteria, and given the similarity to the turn-around cases, it was objectively reasonable for an experienced officer, situated as was Coleman, to reach this conclusion.

We hold that, under all the circumstances, agent Coleman acted with an objectively reasonable good faith belief that he had a reasonable articulable suspicion that legally justified stopping Ramirez on Pinon Road.[4]  The evidence seized at the checkpoint was

---

[4]     We do not address whether the stop was constitutional, only that, considering together all the particular circumstances of this case, the stop was sufficiently justified under the good faith exception to allow the fruits of the stop to be admitted in evidence.

hence admissible and Ramirez's conviction and sentence are affirmed.

AFFIRMED