**The STATE of Ohio, Appellant,**

v.

**GREER, Appellee.**

[Cite as *State v. Greer* (1996), 114 Ohio App.3d 299.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15695.

Decided Sept. 27, 1996.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, or *Susan M. Brasier*, Assistant Prosecuting Attorney, for appellant.

*Randall Rock*, for appellee.

FAIN, Judge.

The issue in this case is whether the application of the exclusionary rule may be avoided with respect to evidence obtained by a police officer as a result of an investigative stop based upon conduct observed by the officer that the officer mistakenly, but reasonably, believes to constitute a violation of law. The trial court excluded the evidence, and the state appeals. We conclude that in a limited class of circumstances, including the circumstances in this case, the application of

the exclusionary rule may be avoided with respect to evidence obtained as a result of an investigative stop based upon conduct observed by a police officer that the officer reasonably, but mistakenly, believes to be a violation of law. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

The relevant facts are succinctly set forth in the trial court's decision, as follows:

"Officer David Crigler, of the Riverside Police Department, was, on September 16, 1995, at approximately 2:45 p.m. traveling eastbound on Valley Street, west of the intersection with Harshman Road. Officer Crigler was traveling behind a rust colored vehicle which made a right hand turn onto Harshman Road and proceeded into a southerly direction. Harshman Road is a divided four lane highway with two lanes southbound and two lanes northbound. The vehicle was traveling in a southbound direction on Harshman Road in the left hand lane. After traveling approximately 150 yards, the vehicle approached a traffic light which controls traffic on both sides from private property. As the vehicle approached the light, it turned left into the crossover area without using the left turn lane provided and proceeded to travel northbound in the right hand northbound lane. Officer Crigler fell in behind the vehicle and stopped it at a Speedway gasoline station, which is just north of the intersection of Valley and Harshman.

"As a result of the stop, defendant-appellant Claude Greer was arrested and charged with Driving Under the Influence, an unlawful turn, and the failure to wear a seatbelt."

It appears that Greer may also have been charged with aggravated menacing and resisting arrest, but these charges are not the subject of this appeal.

Greer moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop. The trial court agreed with Greer that the U-turn forming the predicate for the stop was not unlawful under the Riverside city ordinances, found that the investigative stop was unlawful, granted Greer's motion to suppress, and dismissed all three charges upon the grounds that the suppression order left insufficient evidence to sustain a conviction. From this order, the state appeals.

The state's sole assignment of error is as follows:

"The trial court erred in concluding that Officer Crigler did not have probable cause to stop the defendant after the officer witnesses the defendant make a U-turn at a traffic light."

The trial court held, and the state appears to concede, that Greer's U-turn was not unlawful under the applicable Riverside city ordinance, which provides that

"no vehicle shall be turned so as to proceed in the opposite direction within an intersection." Riverside Ordinance 331.12(c). The trial court reached this conclusion by considering the definition of the word "intersection," which is as follows:

"(a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in [contact].

"(b) Where a highway includes two roadways thirty feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection. If an intersecting highway also includes two roads thirty feet or more apart, then every crossing of two roadways of such highways shall be regarded as a separate intersection.

"(c) The junction of an alley with a street or highway or with another alley shall not constitute an intersection." Riverside Ordinance 301.17; see, also, R.C. 4511.01(K).

The trial court described the place at which Greer made his U-turn as follows:

"[T]he area in question is a four-lane divided highway, which has a traffic control light, which controls the northbound and southbound traffic on Harshman Road. In the opposite direction, the lights control traffic coming from the parking lot of Stebbins High School and in the opposite direction from a lane leading back to the Middle School. At this point, Harshman Road is not intersected by a dedicated street. A review of § 301.17 R.C.O. does not include a definition which describes the area in which the Defendant made his turn. Subsection (a) talks about 'roadways of two highways which join one another.' Subsection (b) deals with two double lane highways which intersect with one another. Subsection (c) tells us that the junction of an alley with a street or highway does not constitute an intersection. It is fundamental * * * criminal law that statutes and ordinances are strictly construed against the State. The Court is of the opinion therefore that the area of junction between the Stebbins High School parking lot and the driveway leading to the Middle School does not constitute an intersection with Harshman Road."

█ We agree with the reasoning of the trial court. Accordingly, we conclude that the trial court properly dismissed the illegal U-turn charge.

The state contends, however, that the evidence relating to the DUI and seatbelt violations should not have been suppressed. Essentially, the state argues that even though Officer Crigler based the investigative stop upon his mistaken belief that the U-turn he observed was in violation of a city ordinance,

the stop was nevertheless reasonable, and the evidence obtained as a result of the stop should not be barred by the exclusionary rule. The state relies upon *State v. Banks* (May 25, 1994), Montgomery App. No. 14201, unreported, 1994 WL 220401, in which we held that evidence should not be excluded that is obtained as the result of an arrest based upon the officer's reasonable, but mistaken, belief that an arrest warrant was outstanding. That case involved a mistake of fact. An arrest warrant had been outstanding, but the judge who had issued the warrant recalled and withdrew it. That latter action had not made its way into the computer records accessible to the police when the defendant was arrested. We held that the evidence obtained as the result of the arrest need not be excluded because the officer's belief that he was authorized to make the arrest was reasonable.

The case before us involves a police officer's mistake of law, rather than a mistake of fact. Courts must be cautious in overlooking police officers' mistakes of law, for the reasons set forth in *People v. Teresinski* (1980), 26 Cal.3d 457, at 462–464, 162 Cal.Rptr. 44, at 47, 605 P.2d 874, at 876–877:

"If we were to find Officer Rocha's mistake of law [that the observed conduct violated a loitering ordinance] reasonable under these circumstances, we would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce and of the teachings of judicial decisions whose principal function frequently is to construe such laws and to chart the proper limits of police conduct."

Even that court hinted that the result might be different under exceptional circumstances:

"We need not decide, however, whether under exceptional circumstances an officer's reasonable mistake of law might validate police conduct because in this case the officer's mistake cannot be found reasonable." *Id.*

Similarly, in *People v. Molenda* (1979), 71 Ill.App.3d 908, 28 Ill.Dec. 393, 394, 390 N.E.2d 560, 561, an Illinois court, in holding that an officer's mistake of law invalidated a stop, opined:

"We might be of a different view if the statute was ambiguous, or required judicial construction to determine its scope or meaning."

The interpretation of the Riverside city ordinance prohibiting U-turns in the case before us is not free from difficulty. The trial judge appropriately invoked the principle that a criminal statute must be construed strictly against the state. Had the ordinance been liberally construed, the fact that the place where the U-turn occurred did not fall within the expressed exception, in part (c) of the definition of intersection, might permit a conclusion that the place where Greer made his U-turn was an intersection under the ordinance. Although we agree

with the trial court's conclusion that Greer's U-turn was not, in fact, prohibited by the ordinance, we agree with the state that this is not an obvious legal result, and that judicial construction of the ordinance is required to reach that conclusion.

The exclusionary rule for evidence obtained as a result of unlawful searches and seizures is of purely federal construction. Ohio has no independent exclusionary rule for evidence obtained as a result of an unlawful search and seizure. *State v. Mapp* (1960), 170 Ohio St. 427, 11 O.O.2d 169, 166 N.E.2d 387, reversed on other grounds *sub nom. Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. As a creation of federal jurisprudence, the exclusionary rule is subject to some exceptions. Among these is the good-faith exception set forth in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. In that case, the court referred to the competing interests of presenting probative, reliable evidence in criminal cases versus avoiding unreasonable searches and seizures. The court made the following observation:

"An objectionable collateral consequence of this interference with the criminal justice system's truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. *Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor,* the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well 'generat[e] disrespect for the law and administration of justice.'" (Emphasis added; citations omitted.) *Id.* at 907–908, 104 S.Ct. at 3412, 82 L.Ed.2d at 688–689.

 In *Leon,* as in *Banks, supra,* evidence was seized as the direct result of an unlawful search. In the case before us, evidence was obtained as a result of an unlawful investigative stop. The search in the case before us was not independently unlawful; its invalidity depends on the unlawfulness of the investigative stop that preceded it. Because an investigative stop involves less intrusion upon protected liberty interests, less justification is required than would be required for a full-blown search or arrest. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; see, also, *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906.

In our view, the proper balance of the competing interests referred to in *Leon, supra,* permits the use of evidence in a small range of cases in which the evidence has been obtained as the result of an investigative stop that is based upon a police officer's mistaken, but reasonable, belief that the conduct that the officer has observed is in violation of the law. This exception to the exclusionary rule must be narrowly tailored in order to avoid giving police officers the incentive to construe statutes and ordinances broadly for the purpose of finding a violation upon which to predicate an investigative stop. The police officer must be held to

a higher standard of knowledge of the law than would be appropriate for an ordinary citizen, since it is the police officer's special function to apply and to enforce laws. The police officer's mistake of law must be objectively reasonable.

■ In the case before us, we are satisfied that Officer Crigler's mistaken belief that Greer's U-turn was in violation of the ordinance was objectively reasonable. We note that the proper interpretation of the U-turn ordinance is not free from difficulty, and, in fact, the trial judge was unable to reach a decision at the hearing, but had to take the matter under advisement. In our view, Officer Crigler can be forgiven for having concluded that Greer's U-turn, at a place where access to and from a high school on one side and a middle school and government offices on the other side, intersected Harshman Road, with traffic on all four sides governed by a stop light, was in violation of the ordinance. We conclude that Officer Crigler's mistaken belief that the U-turn he observed was illegal is an example of a "minor transgression" by a police officer described in *Leon, supra,* as being insufficient to necessitate invocation of the exclusionary rule.

Greer cites *Whiteley v. Warden* (1971), 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306. We are not persuaded that *Whiteley* supports the exclusion of the evidence in the case before us. In the first place, that case precedes *Leon, supra,* which gave birth to the good-faith exception to the exclusionary rule. Second, *Whiteley* involves evidence obtained as the result of an arrest, rather than evidence obtained as a result of an investigative stop. The arrest in *Whiteley* was based upon an invalid warrant, the invalidity of which was known, or should have been known, by the arresting officer. In the case before us, evidence was obtained as a result of an investigative stop, which represents significantly less intrusion upon an individual's protected liberty interests. We conclude that *Whiteley* is not controlling in the case before us.

The issue in the case before us is close. In close cases, it is well to recall that the limitation upon the government's power of search and seizure, contained in the Fourth Amendment to the United States Constitution, is directed against *unreasonable* searches and seizures:

"The right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures* shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.)

Section 14, Article I of the Ohio Constitution is comparable. The touchstone of search–and–seizure analysis, in areas where the law has not been fully articulated, is whether a police officer has acted unreasonably in intruding upon a citizen's

privacy. In the case before us, we cannot find Officer Crigler's act of stopping Greer to have been unreasonable under all the circumstances.

The state's sole assignment of error is sustained.

The state's assignment of error having been sustained, that part of the order of the trial court suppressing the evidence and dismissing the DUI and seatbelt charges is reversed, and that part of the order dismissing the illegal U-turn charge is affirmed.

*Judgment accordingly.*

WOLFF and GRADY, JJ., concur.