**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfredo MORENO–CHAPARRO,
Defendant–Appellant.**

No. 97–50641.

United States Court of Appeals,
Fifth Circuit.

Sept. 30, 1998.

Joseph H. Gay, Jr., U.S. Atty., Margaret Feuille Leachman, San Antonio, TX, for Plaintiff–Appellee.

Philip J. Lynch, San Antonio, TX, for Defendant–Appellant.

Before POLITZ, Chief Judge, and WISDOM and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Alfredo Moreno–Chaparro appeals the district court's denial of his motion to suppress evidence allegedly obtained as the result of an unconstitutional stop by a United States Border Patrol agent. For the reasons assigned we conclude and hold that the stop at issue violated fourth amendment guarantees.

## BACKGROUND

On March 5, 1997 at approximately 2:00 p.m., United States Border Patrol Agent Alfred Hollenbeck was observing activity on Highway 67 from a temporarily closed immigration checkpoint. The checkpoint involved is located about five miles south of Marfa, Texas and approximately 60 miles north of Presidio, Texas and the Mexican border. Traffic included a black Chevrolet pickup truck traveling northbound.[1] As the truck passed through the checkpoint the male driver, later identified as Moreno, slowed and appeared surprised to see the patrol car alongside the checkpoint. Hollenbeck testified that when a checkpoint is closed, drivers typically "just go about their business and they don't think twice about stopping or looking or staring." Upon cross examination, however, Agent Hollenbeck candidly conceded that it was not unusual for a driver to decelerate and glance at the checkpoint when closed.

When Moreno passed though the checkpoint Hollenbeck could not determine that he was Hispanic. Although a Mexican, Moreno has light skin, blonde to light brown hair, and green eyes. Hollenbeck decided to conduct an immigration check because, he says, he suspected that Moreno was an illegal alien and possibly was harboring other illegal aliens in the truck. Prior to stopping Moreno, Hollenbeck ran a license check on the vehicle and learned that it was registered to Isma Moreno of El Paso, Texas.

---

**1.** Agent Hollenbeck testified that he believed that the highway was particularly vulnerable to smugglers during shift changes because of reduced manpower. A shift change usually occurs at 2:00 p.m.

After the stop, Moreno gave Hollenbeck his resident alien card and explained that he did not speak English. In their Spanish exchange, Hollenbeck asked Moreno about the origin of his trip, his destination, and whether the truck belonged to him. Moreno said that the truck belonged to his sister and explained that he was returning from Mexico where he had been visiting relatives for the past two weeks. Hollenbeck indicated that he was puzzled by this answer because Moreno did not appear to have luggage.

Hollenbeck asked for consent to search the vehicle. He then noticed that the truck was clean except for the undercarriage which was caked with mud. He testified that mud is often used to mask new bolts and changes made to hide drugs. Although a canine search did not result in an alert for the presence of drugs, Hollenbeck directed Moreno to return the vehicle to the checkpoint for closer inspection. After the mud was removed, Hollenbeck noticed new bolts supporting the gas tank. The agent then secured permission to search the inside of the gas tank and discovered therein a hidden compartment containing 185 pounds of marihuana.

## ANALYSIS

■ In *United States v. Brignoni–Ponce*, the Supreme Court directed that "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." [2] Several factors weigh into the determination whether a stop is justified.[3] No single factor is determinative; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers.

■ In the case at bar, the district court found that the following facts supplied rea-

sonable suspicion: (1) the agent's experience; (2) the time of day; (3) the particular type of vehicle; (4) the driver slowed down to look at the checkpoint and seemed surprised to see an officer there; (5) the agent found that the driver appeared extremely nervous; (6) the clean appearance of the vehicle's exterior coupled with the muddy appearance of the underside of the vehicle; and (7) the driver did not appear to have luggage despite a two week visit with relatives in Mexico. While we would agree that this collage of factors may be sufficient to supply an officer with reasonable suspicion, we must perforce note that only the first four were known by Agent Hollenbeck at the time of the stop. Obviously only those factors known to the officer at the time of the stop can be considered when determining whether the stop was reasonable.

■ A vital element of the *Brignoni–Ponce* test is whether the agent had reason to believe that the vehicle in question had come from the border.[4] It appears manifest that Agent Hollenbeck did not have reasonable grounds to believe that Moreno had crossed the border. Moreno was 60 miles north of the Mexican border, driving a Chevrolet pickup truck with valid Texas license plates, and could have been coming from nearby communities, including Presidio, which is a town populated by several thousand residents. This factor alone is not controlling and other factors must be given appropriate consideration in the determination whether reasonable suspicion existed.

■ The government places heavy emphasis on Moreno's "surprised" appearance when he saw Agent Hollenbeck parked at the checkpoint. Although Hollenbeck noted that most drivers do not look to see if an officer is parked at a closed checkpoint, he testified that it was not unusual for them to do so. We cannot help but note that the government

**2.** 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

**3.** Factors to be considered include: (1) characteristics of the area in which the vehicle is encountered; (2) unusual patterns of traffic on the particular road; (3) proximity to the border; (4) information about recent illegal crossings in the

area; (5) appearance of the vehicle; (6) number and appearance of the passengers; (7) behavior of the driver; and (8) behavior of the passengers. *Brignoni–Ponce*, 422 U.S. at 884–85, 95 S.Ct. 2574.

**4.** *United States v. Orona–Sanchez*, 648 F.2d 1039 (5th Cir.1981).

has variously relied on both sides of the factor, on some occasions contending that it is suspicious for a person to look and on other occasions insisting that it is suspicious not to look. We are persuaded that in the ordinary case, whether a driver looks at an officer or fails to look at an officer, taken alone or in combination with other factors, should be accorded little weight.[5] To conclude otherwise "would put the officers in a classic 'heads I win, tails you lose' position. The driver, of course, can only lose."[6] The government maintains that in addition to looking over at the parked Border Patrol car, Moreno looked surprised at seeing an agent parked at the checkpoint. We perceive little significance in a driver looking surprised to see a Border Patrol agent parked at a closed immigration checkpoint. More is needed to articulate the mandated reasonable suspicion required for a stop by the Supreme Court's teachings.

Prior to stopping Moreno, Agent Hollenbeck ran a license plate check and discovered that the truck Moreno was driving was registered to a female resident of Texas. The government insists that this was a factor contributing to reasonable suspicion. Hollenbeck, however, testified to the obvious, i.e., that it is not unusual for a man to drive a vehicle registered to a woman. Further, the type of vehicle was not suspect. Although Agent Hollenbeck testified that the Border Patrol carefully watches "Chevys in general," it would be manifestly unreasonable to target every Chevrolet pickup truck driven on Texas highways. The agent could not point to *anything* suspicious about the truck. It contained no visible passengers, it had not been modified in an obvious way, and it was not riding low to the ground as if it were loaded down with people or contraband; it was neither particularly clean nor particularly dirty. It was just an average pickup truck on a highway in Texas.

The government stresses that the time of day that Moreno passed though the checkpoint added to the suspicion. Moreno drove past the checkpoint at approximately two o'clock in the afternoon. The government contends that this serendipitous time contributes to reasonable suspicion because it is the time of the Border Patrol shift change. During the shift change, we are told, the roads are left virtually unchecked and there accordingly is a particular vulnerability to smugglers who are aware of the timing of the shift change. While we may empathize with the Border Patrol's concerns regarding increased exposure during times of reduced manpower, we are not willing to sacrifice the constitutional protections of drivers to lessen the perceived adverse impact resulting from the decision of the Border Patrol to change shifts at the same time everyday.

In summary, we find, conclude, and hold that each factor presented by the government is non-remarkable and unsuspicious. Taken together, and considered in the context of the agent's experience, the factors known to the agent at the time of the stop of Moreno's vehicle fall far short of providing the required reasonable suspicion. "In the context of border area stops, the reasonableness requirement of the Fourth Amendment demands something more than the broad and unlimited discretion sought by the Government."[7]

Finally, we consider the government's alternative contention, raised for the first time on appeal, that even if the stop was not proper under *Brignoni–Ponce*, Agent Hollenbeck's actions pass muster under the good faith exception to the exclusionary rule. Under this exception, the exclusionary rule will not apply if an officer's actions were objectively reasonable and in good faith.[8] Specifically, the government cites *United States v. Ramirez–Lujan* [9] and contends that because the factors known to Hollenbeck

5. *United States v. Nichols,* 142 F.3d 857 (5th Cir.1998); *United States v. Chavez–Villarreal,* 3 F.3d 124 (5th Cir.1993); *United States v. Escamilla,* 560 F.2d 1229 (5th Cir.1977).

6. *Escamilla,* 560 F.2d at 1233.

7. *Brignoni–Ponce,* 422 U.S. at 882, 95 S.Ct. 2574.

8. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. De Leon–Reyna,* 930 F.2d 396 (5th Cir.1991) (en banc).

9. 976 F.2d 930 (5th Cir.1992).

gave him an objectively reasonable good faith belief that he was legally justified in making the stop, the stop was valid.

We are not persuaded that the good faith exception to the exclusionary rule is applicable in the appeal at bar. Unlike the three Supreme Court decisions recognizing a good faith exception to the exclusionary rule,[10] Hollenbeck's actions were not based upon apparent external authorization, such as an outdated computer-generated warrant report, a statute later found to be unconstitutional, or an improperly issued warrant. The existence of such external sources for measuring objective good faith undergirds the good faith exception to the exclusionary rule.[11] Hollenbeck's asserted bases for reasonable suspicion, however, consisted only of his subjective considerations, rather than external sources such as described above. Accordingly, the good faith exception cannot apply.[12]

We also reject the government's contention that *Ramirez–Lujan* permits the application of the good faith exception. In that case, an agent followed and stopped an unfamiliar vehicle that had turned off the main highway, within view of the checkpoint, onto an unpaved road which serviced only two ranches. The agent had been stationed at the permanent border patrol checkpoint for three years and recognized the vehicles associated with those ranches.[13] We reminded that reasonable suspicion was not required to make a stop at a permanent border checkpoint nor when a vehicle apparently maneuvers to avoid the checkpoint.[14] We then concluded that the turn onto the unpaved road and the agent's knowledge of the vehicles customarily using that road, afforded the agent a reasonable good faith belief that the defendant was attempting to avoid the checkpoint.[15] That factual scenario obviously does not exist herein.

Moreno's motion to suppress should have been sustained. We therefore REVERSE the order of the district court denying the motion to suppress, grant said motion, and REMAND for further proceedings consistent herewith.

---

**10.** *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).

**11.** *See Nichols*, 142 F.3d at 860 n. 1 (5th Cir. 1998) (stating that "the situation justifying application of the good faith exception to reasonable suspicion determinations has always involved circumstances extrinsic to the government agent's personal observations at the time of the stop").

**12.** We further note that the purpose behind the good faith exception to the exclusionary rule would not be served by its application here. The good faith exception was created because use of the exclusionary rule would not have the desired deterrent effect on the future conduct of officers when the complained-of errors were not a result of the officers' conduct, but instead were a result of some external authorization. *Leon*, 468 U.S. at 920–21, 104 S.Ct. 3405. Refusing to apply the good faith exception in the present case, however, in which only Hollenbeck's subjective considerations are involved, would have a deterrent effect on his conduct and the conduct of future officers because it is precisely such improper subjective considerations which warrant deterring.

**13.** *Ramirez–Lujan*, 976 F.2d at 931–32.

**14.** *Id.* at 933.

**15.** *Id.* at 934.