CRAWFORD, Chief Judge
(concurring in the result):
The issue of whether the police officer had a reasonable suspicion that justified making an investigative stop of Appellant’s motor vehicle is admittedly a close question in this ease. Nevertheless, what is clear from the factors discussed and the analysis set forth by the majority is that the officer acted with a good faith belief that he had a legally justifiable reasonable suspicion to stop Appellant’s motor vehicle. Therefore, I would apply the good faith exception to the exclusionary rule in this case and affirm Appellant’s conviction.
This case presents the issue of whether the exclusionary rule should apply to evidence seized as a result of an investigative stop which the officer reasonably, but mistakenly, believed was a violation of Florida traffic law. The question of whether to invoke the good faith exception to a police officer’s warrant-less stop has divided state and federal courts. See, e.g., United States v. Ramirez-Lujan, 976 F.2d 930 (5th Cir.1992); United States v. Williams, 622 F.2d 830, 840 (5th Cir.1980); State v. Greer, 114 Ohio App.3d 299, 683 N.E.2d 82 (1996); but see State v. Deherrera, 965 P.2d 501 (Utah Ct.App.1998). The Military Rules of Evidence permit the admission of evidence derived from searches and seizures that otherwise satisfy the United States Constitution. See, e.g., Military Rules of Evidence 314(k), 316(f).
The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
The amendment has two clauses — the reasonableness clause and the warrant clause. It has no express provision for a remedy when evidence is obtained as a result of an illegal search or seizure. For more than 100 years after the American Revolution, the remedy for an illegal search or seizure was a trespass action for damages. In an early English decision, well known in this country, Entick v. Carrington, 19 Howell’s State Trials 1029 (1765), the police ransacked Entick’s home for four hours to obtain pamphlets that were highly critical of the king. Lord Camden, Lord Chief Justice of the Common Pleas, struck down the search warrant and awarded Entick 300 pounds in damages. He declared:
This power so assumed by the secretary of state is an execution upon all the party’s papers, in the first instance. His house is rifled; his most valuable secrets are taken out of his possession, before the paper for which he is charged is found to be criminal by any competent jurisdiction, and before *435 he is convicted either of writing, publishing, or being concerned in the paper.
Id. at 1064.
The same Lord Camden invalidated the general warrants employed against John Wilkes, per the publication of Issue No. 45, The North Britons. Wilkes v. Wood, 98 Eng. Rep. 484 (K.B.1763). Even the early courts in this country recognized that damages were the appropriate remedy.
If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue.
Commonwealth v. Dana, 43 Mass. (2 Met.) 329, 337 (1841).
The first move away from the remedy of damages was signaled in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), in which the Court excluded documents obtained from Boyd’s house because a “seizure of a man’s private books and papers to be used in evidence against him is [not] substantially different from compelling him to be a witness against himself.” Id. at 633, 6 S.Ct. 524. Justice Bradley derived his conclusion in part from the following passage in Entick:
It is very certain that the law obligeth no man to accuse himself; because the necessary means of compelling self-accusation, faking upon the innocent as well as the gukty, would be both cruel and unjust; and it should seem, that search for evidence is disahowed upon the same principle. There too the innocent would be confounded with the guilty.
19 Howell’s State Trials at 629.
The remedy the courts eventually formulated, the exclusionary rule for Fourth Amendment violations, was first enunciated in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Even after Weeks, the state courts resisted the exclusionary rule. Justice Cardozo questioned whether the “criminal is to go free because the constable has blundered.” People v. Defore, 242 N.Y. 13, 150 N.E. 585, 587 (1926). He commented that although a number of states have appked Weeks, more have rejected it. “With authority thus divided, it is only some overmastering consideration of principle or of policy that should move us to change. The balance is not swayed until something more persuasive than uncertainty is added to the scales.” Id. at 588.
Nevertheless, in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court applied the exclusionary rule to the states. In Mapp, the Court justified the exclusionary rule by placing emphasis on “the imperative of judicial integrity.” Id. at 659, 81 S.Ct. 1684 (quoting Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (I960)). The Court reasoned that the government had to play fair and could not be akowed to profit from ikegal acts. Justice Black believed that the self-incrimination clause of the Fifth Amendment coupled with the Fourth Amendment justified the rule. Id. at 661-62, 81 S.Ct. 1684 (Black, J., concurring).
The Court identified a second reason for the rule: to curb pokce misconduct effectively. As the Court stated, “the purpose of the exclusionary rule ‘is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.’” Mapp, 367 U.S. at 656, 81 S.Ct. 1684 (quoting Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). The Court emphasized this purpose again in United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), by stating that the exclusionary “rule’s prime purpose is to deter future unlawful police misconduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]”
In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court applied the good faith exception to the exclusionary rule. Leon, a drug trafficker, was searched pursuant to a “facially valid” search warrant obtained by the state pokce. At trial, the evidence seized by the police was suppressed. The Court held that the good *436 faith search or seizure by the police pursuant to a warrant does not require exclusion, even though probable cause was lacking. The Court commented that to the extent to which the exclusionary rule has no effect on the behavior of magistrates as to the right to privacy, it is misplaced. “[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion.” Id. at 922, 104 S.Ct. 3405. While exclusion is certainly warranted where there is a flagrant violation or a reckless disregard of the facts in a case, the deterrence rationale does not work when the officer is acting in good faith, as in this case.
In 1992, this Court adopted Leon in United States v. Lopez, 35 M.J. 35 (C.M.A.1992). The Court recognized that the rationale in Leon “extends with equal force to search or seizure authorizations issued by commanders who are neutral and detachedf.]” Id. at 39. In the past, the Courts of Military Review had been split on applying the good faith exception, id. at 40, and this Court had not clearly addressed the issue. We recognized that the good faith exception would not apply where there is intentional or reckless misconduct by the police, or where the basis for the action was totally lacking, and thus was unreasonable. Id. at 41-42. In this instance, there was not a flagrant disregard of the stop rule or unreasonable conduct.
With this background, I now turn to the question of whether and under what circumstances the good-faith exception to the exclusionary rule can and should apply to a warrantless investigative stop by a police officer.
The defendant in Greer was seen by the police officer turning left into a cross-over area without using the left-turn lane provided and then went in the other direction. The officer stopped him for what appeared to be an illegal U-turn, but the Court, interpreting the state’s statute, stated the officer’s conclusion that it was an illegal U-turn may have been mistaken, yet the Court held that the stop was not unreasonable and applied the good-faith exception to a stop “based upon conduct observed by the officer that the officer mistakenly, but reasonably, believes to constitute a violation of law.” 683 N.E.2d at 83. The stop in Greer was a “minor transgression,” and not an intentional or flagrant illegality. Id. at 86.
The Fifth Circuit Court of Appeals has applied the good-faith exception to an investigatory stop in Ramirez-Lujan. RamirezLujon was seen by a border patrol agent some 35 miles from the border, 25 miles east of El Paso, Texas, traveling on what was considered “a road to nowhere.” 976 F.2d at 931. Drug smugglers were known to use this road to proceed to a known drug distribution center. A border patrol agent with three years’ experience knew the locals who lived down that road. When he saw Ramirez-Lujon’s pick-up truck, he did not recognize it as a vehicle belonging to one of the ranchers who lived on the road and decided to investigate. After following the vehicle for some four miles, he decided to make a stop.
The court upheld the stop, based either on “the constitutional test of reasonableness or the good-faith exception.” Id. at 933. The court held that “under all the circumstances, [the border patrol agent] acted with an objectively reasonable good faith belief that he had a reasonable articulable suspicion that legally justified stopping Ramirez[-Lujan].” Id. at 934. The court decided not to address the constitutionality of the stop because it “was sufficiently justified under the good-faith exception.” Id. at 934 n. 4.
The rationale in Greer and Ramirez-Lujan applies to this case. The majority holds that there was reasonable suspicion to stop Appellant.
Appellant was twice seen by Officer Jennewein in high crime areas at an unusual time. The first time Appellant’s vehicle was parked in “right next to” a well-known drug dealer’s house. Appellant’s vehicle, owned by an Air Force noncommissioned officer who lived on Patrick AFB, was out of place. Appellant’s presence was sufficiently unusual that Officer Jennewein kept his vehicle under surveillance until he was called away by his dispatcher. A short time later, Officer Jennewein saw *437 Appellant’s vehicle a second time, cruising in a nearby high-crime neighborhood. As soon as Officer Jennewein pulled out behind Appellant’s vehicle, Appellant made a sudden turn into an unpaved alley. Even if the turn was not illegal under Florida law, it was (1) evasive, (2) an indicator of impaired driving, and (3) unusual because it was a sudden turn onto an unpaved alley that was not a customary roadway. Considering the totality of the circumstances, we hold that Officer Jennewein had reasonable suspicion sufficient to justify an investigative stop of the Appellant’s vehicle.
58 M.J. at 433. Considering all the facts set forth by the majority, it is clear that Officer Jennewein had an objectively reasonable suspicion that Appellant was engaged in criminal activity. Certainly, there was more than one basis for the stop — the fact that one theory was precluded by the Florida statute does not preclude the application of the criminal misconduct theory under these facts.
Rejecting the exclusionary rule in this case would neither denigrate Fourth Amendment values nor complicate the right to privacy because this is not a question of police lawlessness. Certainly, deterrence of police misconduct is not necessary in a borderline case like this, where the officer has acted reasonably and in good faith. The courts have applied a reasonableness standard as to apparent authority, see Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)(third-party consent); Winters v. Adams, 254 F.3d 758 (8th Cir.2001)(reasonable to detain agitated occupant of parked car who police suspected may be overdosing); Gallegos v. Colorado Springs, 114 F.3d 1024 (10th Cir.1997)(reasonable to stop and check distraught person walking in the middle of the street), and many other exceptions to the Fourth Amendment such that it would be incongruous not to apply it here. California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)(many reasonableness exceptions to the Fourth Amendment).
Whether the exclusionary rule is based on judicial integrity, see, e.g., Olmstead v. United States, 277 U.S. 438, 470, 484, 48 S.Ct. 564, 72 L.Ed. 944 (1928)(Holmes and Brandéis, JJ., dissenting), or the deterrence of police misconduct, Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), neither justification would require suppression in this case.
A “police officer will not be deterred from an illegal search if he does not know that it is illegal.” Charles Alan Wright, Must the Criminal Go Free if the Constable Blunders?, 50 Tex.L.Rev. 736, 740 (1972). Because the officer’s action in this case was reasonable, I would not apply the exclusionary rule and would affirm Appellant’s conviction.