[Cite as *State v. Ruhenkamp*, 2026-Ohio-1791.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-20 |
| Appellee | : | |
| | : | Trial Court Case No. 25-TRC-001-0964 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| BENJAMIN J. RUHENKAMP | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 15, 2026, the judgment of the trial court is reversed and remanded for further proceedings.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

OPINION

ALEXANDER S. PENDL, Attorney for Appellant
MATTHEW J. PIERRON, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Benjamin J. Ruhenkamp appeals from a judgment entry of conviction for operating a motor vehicle while under the influence ("OVI") and a red-light violation. Because the arresting officer lacked reasonable, articulable suspicion that a red-light violation had occurred, the evidence that flowed from the improper traffic stop was fruit of the poisonous tree, and the trial court erred in overruling Ruhenkamp's motion to suppress. The judgment of the Darke County Municipal Court is reversed, and this matter is remanded for further proceedings.

**Facts and Procedural History**

{¶ 2} On June 17, 2025, Ruhenkamp was cited for two OVI offenses and a red-light violation, and he pleaded not guilty. On June 21, 2025, Ruhenkamp filed a motion to suppress. After  hearings on August 18 and September 30, 2025, the court denied the motion, finding in relevant part—without any analysis or citation to authority—that the stop for the red-light violation was conducted with reasonable suspicion and lawful. On October 10, 2025, Ruhenkamp pleaded no contest to OVI, with a positive breathalyzer test, and to the red-light violation. The court sentenced him to a 30-day jail term, with 27 days suspended and 3 days to serve, with the option to attend a three-day driver intervention program. The court imposed a $650 fine, assessed six points on Ruhenkamp's driver's license, and sentenced him to a year of probation with driving privileges for limited purposes. The court dismissed    the    violation    of    R.C.    4511.19(A)(1)(a)    as    an    allied    offense    of

2

R.C. 4511.19(A)(1)(d), and it did not impose an additional fine or points for the red-light violation. Ruhenkamp timely appealed.

## Assignment of Error and Analysis

{¶ 3} In his sole assignment of error, Ruhenkamp asserts five separate grounds on which the trial court erred in overruling his motion to suppress—namely that the stop of his vehicle and his removal therefrom to administer field sobriety tests were unlawful; the horizontal gaze nystagmus field sobriety test was not administered in substantial compliance with National Highway Traffic Safety Administration guidelines; his arrest was unlawful; and the subsequent chemical test was not administered in compliance with Ohio Department of Health standards. Based on our review of the record, the stop of Ruhenkamp's vehicle for the red-light violation was unlawful and accordingly dispositive of this matter.

{¶ 4} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 2019-Ohio-4210, ¶ 16. "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *State v. Isaac*, 2005-Ohio-3733, ¶ 8, (2d Dist.), citing *State v. Retherford*, 93 Ohio App.3d 586 (2d Dist. 1994). "The application of the law to the trial court's findings of fact is subject to a de novo standard of review." *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.).

3

**{¶ 5}** As noted by the Sixth District:

"The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). This type of seizure is justified if an officer has a "reasonable suspicion"—i.e., "a particularized and objective basis" to suspect—that the person stopped has broken the law. *Id*. at 60. In other words, a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed a traffic violation. *Mays* at ¶ 7-8.

*State v. Scott*, 2022-Ohio-2071, ¶ 23 (6th Dist.).

**{¶ 6}** One "type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based upon specific or articulable facts that criminal behavior is imminent or has occurred." *State v. Bullock*, 2017-Ohio-497, ¶ 7 (12th Dist.), citing *Terry v. Ohio*, 392 U.S.1 (1968). "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hairston*, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.'" *Id*., quoting *United*

4

*States v. Cortez*, 449 U.S. 411, 418 (1981). When reviewing an officer's actions, the court "must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Andrews* at 88, citing *Cortez*.

{¶ 7} "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-557 (2d Dist. 1990). "Reasonable suspicion for a *Terry* stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *State v. Tidwell*, 2021-Ohio-2072, ¶ 20, quoting *Alabama v. White*, 496 U.S. 325, 330 (1990). "'Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" . . . that must be taken into account when evaluating whether there is reasonable suspicion.'" *Id.*, quoting *White* at 330, quoting *Cortez* at 417.

{¶ 8} "The derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure." *State v. McLemore*, 2012-Ohio-521, ¶ 20 (2d Dist.), citing *Nardone v. United States*, 308 U.S. 338 (1939). "The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality." *Id.*

{¶ 9} Ruhenkamp was charged with violating R.C. 4511.12, which governs obedience to traffic control devices, and states: "No . . . driver of a vehicle . . . shall disobey the instructions of any traffic control device . . ." R.C. 4511.13(C)(1)(a) states: "Vehicular traffic . . . facing a steady circular red signal . . . shall stop at a clearly marked stop line." However, the statutory provision governing obedience to a red traffic signal must be interpreted in

5

conjunction with the provision that applies to a steady yellow signal indication, R.C. 4511.13(B)(1), which states:

> Vehicular traffic . . . facing a steady circular yellow signal indication are thereby warned that the related green movement or the related flashing arrow movement is being terminated or that a steady red signal indication will be exhibited immediately thereafter when vehicular traffic . . . shall not enter the intersection. The provisions governing vehicular operation under the movement being terminated shall continue to apply while the steady circular yellow signal indication is displayed.

*See Columbus v. Sharaf*, 2002-Ohio-4502, ¶ 29 (10th Dist.) ("Ohio courts have construed both local and state traffic code provisions . . . to mean that a motorist who enters an intersection on a yellow signal is lawfully within the intersection and, having the right-of-way, may continue with caution through the intersection."); *State v. Coleman*, 2026-Ohio-203, ¶ 22 (2d Dist.) (officer acted on inchoate hunch and lacked reasonable, articulable suspicion that traffic violation occurred when defendant was already in the intersection and past the stop line when the officer first observed her vehicle and did not see her cross the stop line while the light was red).

{¶ 10} As this Court has noted:

> Distinctions have been made between cases where a stop is based on a mistake of fact and cases where the justification for the stop is based on a mistake of law. *See, e.g., State v. Reedy,* 5th Dist. Perry No. 12-CA-1, 2012-Ohio-4899, ¶ 19, citing *State v. Greer,* 114 Ohio App.3d 299, 683 N.E.2d 82 (2d Dist. 1996) (officer's mistake of law was objectively reasonable). *Compare State v. Babcock,* 2013-Ohio-2366, 992 N.E.2d 1215, ¶ 20 (6th Dist.) (officer's

6

mistake of law would defeat the purpose of the exclusionary rule). *See also*
*State v. Fears,* 8th Dist. No. 94997, 2011-Ohio-930, ¶ 12; *State v. Drushal,*
9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, ¶ 13; *State v. Stadelman,*
1st Dist. Hamilton No. C–130138, 2013-Ohio-5035, ¶ 4.

(Footnote omitted.) *State v. Dowty*, 2016-Ohio-4719, ¶ 16 (2d Dist.) (because traffic stop was predicated on mistake of law, trial court did not err in sustaining motion to suppress). *See United States v. Lopez–Valdez,* 178 F.3d 282, 289 (5th Cir. 1999) ("[I]f officers are allowed to stop vehicles based on their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic stops as pretext for effecting stops seems boundless and the costs to privacy rights excessive").

{¶ 11} At the suppression hearing, Officer Aaron Gilbert of the Versailles Police Department, who stopped Ruhenkamp, testified that he had been a police officer for a little over 18 months. He acknowledged that he was a fairly new police officer. Gilbert stated that on June 13, 2025, at 11:11 p.m., while on routine patrol on Main Street, he was stopped at the light controlling the intersection of Main Street and West Street. West Street runs north-south and is perpendicular to Main Street. While waiting at the stop light, Gilbert observed a black Chevy truck traveling north on West Street run a red light. Gilbert testified repeatedly that he was very familiar with the intersection and its layout, having driven through it many times from all four directions. Based on the alleged red-light violation, Gilbert turned right to proceed behind Ruhenkamp and stopped Ruhenkamp's vehicle on West Street.

{¶ 12} Gilbert stated that West Street is a truck route, and on the south side of the intersection, the stop line before the traffic signal is set back from Main Street at a distance from the crosswalk to allow trucks to negotiate turns in the intersection. The trial court took judicial notice of the measurements reflected in an aerial photo from Google Maps. The

7

photo showed a distance of over 36 feet between the stop line on the northbound side of West Street and the crosswalk along the south side of the intersection.

{¶ 13} Gilbert's cruiser camera video was played for the court, and he testified that it fairly and accurately depicted the events that led to the traffic stop. He stated that at the time of the alleged red-light violation, Ruhenkamp was past the stop line but "clearly" not past the crosswalk. Gilbert said that the crosswalk was located where "a normal stop bar would be." When asked if Ruhenkamp had "entered the intersection" at the time of the alleged violation, Gilbert responded, "I guess, yes, if it's based off that stop bar." He conceded that screenshots from his cruiser camera video showed that Ruhenkamp had passed the stop line when the light turned yellow and was even further beyond it when the light turned red, such that he did not commit a red-light violation. Finally, Gilbert acknowledged that it is not a traffic offense to drive through a yellow light. On the second day of the hearing, Gilbert testified that he believed entering the intersection meant "breaking the plane [of the crosswalk] and taking over the intersection."

{¶ 14} We have viewed Gilbert's cruiser camera video. While Gilbert's cruiser is stopped at the red light, Ruhenkamp's vehicle crosses the intersection in front of Gilbert from the left side of Gilbert's perspective. The light facing Ruhenkamp can be seen changing from green, to yellow, to red as he approaches. Consistent with the screenshot from Gilbert's cruiser camera, the moment the light facing Ruhenkamp changes to red, his vehicle is beyond the stop line, and he almost completely clears the intersection before Gilbert's light turns green. Accordingly, a red-light violation did not occur, because Ruhenkamp crossed the stop line on a yellow light (as Gilbert conceded), and the stop was predicated on a mistake of law by Gilbert. Based on the totality of the circumstances, including Gilbert's limited experience of only 18 months in law enforcement, he lacked reasonable, articulable

8

suspicion to initiate the traffic stop of Ruhenkamp's vehicle. Rather, Gilbert acted on an inchoate hunch that Ruhenkamp committed a red-light violation when he crossed the crosswalk on a red light. The exclusionary rule bars the admission of evidence obtained as a result of a traffic stop based on conduct that a police officer mistakenly believed is a violation of the law. The facts here are not in dispute, and Gilbert's testimony alone established the lack of a violation when he conceded that Ruhenkamp was past the stop line when the light turned red. Evidence of the OVI offense that flowed from the improper traffic stop was fruit of the poisonous tree and thus subject to suppression. Given our analysis of Ruhenkamp's arguments related to the basis of the traffic stop, we need not evaluate the other bases for suppression articulated in his assignment of error. Accordingly, Ruhenkamp's assignment of error is sustained.

## Conclusion

{¶ 15} The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.

9