IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

―――――――――――――――

No. 98-50446

―――――――――――――――


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERTO SAMAGUEY,

Defendant-Appellant.


―――――――――――――――

Appeal from the United States District Court
For the Western District of Texas

―――――――――――――――

June 28, 1999


Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Alberto Samaguey appeals his conviction for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). While driving northbound on Texas Highway 118 about 80 miles from the Texas-Mexico border, Samaguey was stopped by border patrol agents for an immigration check. The district court denied Samaguey's motion to suppress the evidence found during the stop and concluded, after a bench trial, that Samaguey was guilty as charged. We affirm.

**I**

On December 19, 1997, a radio operator at the Marfa Sector Headquarters spotted sensor hits, indicating a northbound car on Highway 118. The first activated sensor was about 20 miles from the border and 40 miles south of Alpine. The operator notified Border Patrol Agents Casey Smart and Francisco Lopez. They were working the 11:00 p.m. to 7:00 a.m. roving patrol shift on Highway 118 south of Alpine, Texas, and Highway 385 south of Marathon, Texas.

The agents parked their marked patrol car perpendicular to Highway 118, about five miles south of Alpine. At approximately 5:45 a.m., the agents saw a two-door 1988 Honda Accord approaching. Agent Smart turned on his headlights as the Honda neared, and the Honda slowed down. The agents observed a lone Hispanic man, later identified as Alberto Samaguey. The agents testified that they were familiar with the few locals but did not recognize the Honda's driver. Agent Smart testified that Samaguey did not look at the border patrol car as he passed it. The agents testified that, in their experience, a lone Hispanic driver coming up Highway 118 at that time was either smuggling illegal aliens or drugs.

Agent Smart followed the Honda and drove closer to check the license plate. At some point during the pursuit, the Honda swerved, then continued at a speed of 45 miles per hour, slower than the posted limit. Agent Smart testified that it was common for drivers with alien or narcotic loads to slow down while an officer followed them. The agents thought the driver was nervous, which in their experience indicated the driver had something to

hide.  The agents noticed that the Honda had dust and dry mud on it.  The registration check indicated that the car was registered to Maria Lagunas of New Mexico.  The agents thought it was strange for a lone male to be driving an out-of-state female's car.  They did not think Samaguey looked like a tourist, and they did not notice any stickers indicating the Honda had been at Big Bend National Park.

Three miles south of Alpine, Agent Smart decided to perform an immigration check.  The driver, Samaguey, identified himself as an American citizen.  Agent Smart testified that Samaguey appeared nervous; he tightly gripped the steering wheel throughout the questioning and spoke in a shaky voice.  Samaguey told Agent Smart that he was coming back from visiting his girlfriend in Lajitas, which he mispronounced as "Letas," and that he had borrowed the car from his friend, Edward Santose of New Mexico.  Agent Smart testified that it was common that vehicles smuggling aliens and narcotics be borrowed and not registered to the driver.  Agent Smart noticed only one key in the ignition -- no key chain or ring, another common characteristic for smuggling operations.

Agent Smart asked if he could search the vehicle, and Samaguey consented.  Agent Smart asked Samaguey if there was anything in the car that he should know about, and Samaguey responded, "I don't know anything."  This response made Agent Smart suspicious.  As he was looking in the car, Agent Smart noticed the panels on the side of the back seat were loose.  He pulled them back and discovered several packages containing marijuana.

3

Samaguey was charged with possession with intent to distribute marijuana. He moved to suppress the marijuana seized by the roving Border Patrol, contending that the stop was made without reasonable suspicion and that the seized marijuana was the fruit of the poisonous tree. His motion was denied, and, on April 27, 1998, he was sentenced to one year and one day imprisonment.

## II

This court reviews a district court's purely factual findings for clear error, viewing the evidence presented at a pretrial suppression hearing in the light most favorable to the prevailing party, in this case the government. See United States v. Inocencio, 40 F.3d 716, 721 (5th Cir. 1994); United States v. Cardona, 955 F.2d 976, 977 (5th Cir. 1992). The conclusions of law derived from a district court's findings of fact, such as whether a reasonable suspicion existed to stop a vehicle, are reviewed de novo. See id.

## III

Under United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975), and United States v. Cortez, 449 U.S. 411, 421-22 (1981), border patrol agents on roving patrol may stop a vehicle only if they have a reasonable suspicion of criminal activity. See United States v. Villalobos, 161 F.3d 285, 288 (5th Cir. 1998). Reasonable suspicion means that the agents are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that that particular

4

vehicle is involved in illegal activity." Id. Factors considered in determining whether reasonable suspicion existed include:

> (1) proximity of the area to the border;
> (2) known characteristics of a particular area;
> (3) previous experience of the arresting agents with criminal activity;
> (4) usual traffic patterns of that road;
> (5) information about recent illegal trafficking in aliens or narcotics in the area;
> (6) the behavior of the vehicle's driver;
> (7) the aspects and appearance of the vehicle; and
> (8) the number, appearance and behavior of the passengers.

United States v. Aldaco, 168 F.3d 148, 150 (5th Cir. 1999) (citing Brignoni-Ponce, 422 U.S. at 884-85). Although this court has recognized that the proximity of a stop to the border is a paramount factor in determining reasonable suspicion, see id. (citing Inocencio, 40 F.3d at 722 n.6), "reasonable suspicion is not limited to an analysis of any one factor." Villalobos, 161 F.3d at 288. Therefore, because "reasonable suspicion" is a fact-intensive test, each case must be examined from the "'totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances.'" Id. (quoting United States v. Casteneda, 951 F.2d 44, 47 (5th Cir. 1992).

We first consider "whether an arresting agent could reasonably conclude that a particular vehicle originated its journey at the border." Inocencio, 40 F.3d at 722. Agent Lopez conceded that the car traveling north on Highway 118 did not necessarily originate its journey from the border. Yet, the timing of the stop, 5:45 a.m., supports the inference that it was Samaguey's car that began

5

to set off a series of sensors along Highway 118, starting about 20 miles from the border.

The arresting officers were knowledgeable and experienced. Agent Lopez had served as a border patrol agent in Alpine for about ten years and Agent Smart for about seven months. See Villalobos, 161 F.3d at 289 (finding relevant that the agents were knowledgeable and experienced; one had over twelve years of experience and the other had fifteen months). Agent Smart testified that, from his experience and past Alpine Station reports, it was common for vehicles involved in narcotics or alien smuggling to have been borrowed and registered to someone other than the driver. The car Samaguey drove had out-of-state license plates and was registered to a female in New Mexico. The agents also testified that, in their experience, a lone, Hispanic male driver coming up Highway 118 at that time of day indicated that the subject was smuggling either illegal aliens or drugs. See Brignoni-Ponce, 422 U.S. at 887 (recognizing that a driver's Mexican or Hispanic ancestry is a relevant factor, but holding that standing alone it does not justify stopping all Mexican-Americans to ask if they are aliens); see also Jones, 149 F.3d at 370 (holding that the time of day may be considered if other objective facts support a conclusion of illegal activity).

Agent Lopez testified that little to no traffic comes up Highway 118 at the time Samaguey was traveling. Although traveling at an unusual time of day alone may not give rise to a reasonable suspicion, it is a permissible consideration. See Villalobos, 161

6

F.3d at 289.  Also, the agents, who were familiar with the locals, did not recognize the driver or the car.  See id. at 289, 291 (noting that the patrol agents' lack of recognition of the driver's truck was a contributing factor to reasonable suspicion).  These factors weigh in favor of the reasonableness of the agents' suspicions.

The driver's behavior is another important consideration in determining reasonable suspicion.  See Aldaco, 168 F.3d at 152. The agents testified that Samaguey acted nervously by slowing down considerably upon seeing the border patrol car.  Samaguey slowed upon seeing a car parked perpendicular to the highway, which illuminated its headlights just before he passed it.  This is the reaction of any cautious driver and due little weight.  Nor do we assign much weight to the fact that Samaguey failed to make eye contact with the parked agents.  See United States v. Moreno-Chaparro, 157 F.3d 298, 301 (5th Cir. 1998).  That Samaguey drove under the speed limit after he passed the parked patrol car, however, is a contributing factor to the officers' reasonable suspicion.  See Villalobos, 161 F.3d at 292 ("While we recognize that deceleration is a common and often completely innocent response to the approach of a patrol car, we hold that it may be a factor contributing to the reasonable suspicion justifying a stop such as this one.").

Samaguey's swerving on the road could have indicated a nervousness or preoccupation with the patrol car which followed him.  The record, however, is not clear about whether Samaguey

7

swerved when the patrol car approached him to read his license plate, hardly suspicious, or if he swerved after the patrol car dropped back, which could reinforce the officers' suspicions about a driver's level of nervousness. See Jones, 149 F.3d at 370. Thus, we give this factor little or no weight. Overall, we find that Samaguey's driving behavior weighs slightly in favor of the reasonableness of the agents' suspicions.

Finally, we are not persuaded that the appearance of Samaguey's car supported the agents' suspicions. The dry mud on his car was not indicative of a recent river crossing, and the agents admitted that a Honda was an unlikely car to cross the Rio Grande.

We conclude that the totality of the circumstances established reasonable suspicion for the agents to stop Samaguey's car. The agents had reason to believe that Samaguey's journey originated at the border, and they noted that Samaguey was traveling alone, in an out-of-state car, registered to a female, at an unusual hour, on a road known for illegal activity. Their suspicions continued as they followed Samaguey, who drove too slowly after spotting the patrol car and may have swerved as a nervous reaction. Therefore, the district court properly denied Samaguey's motion to suppress.

The judgment of the district court is AFFIRMED.