# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51149
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SANTIAGO CARRANZA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:13-CR-898-1

Before BENAVIDES, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Santiago Carranza entered a conditional guilty plea to possession with intent to distribute 100 kilograms or more of marijuana. He appeals the district court's denial of his motion to suppress the evidence of the marijuana, which was found in his vehicle following a stop by border patrol agents. Carranza argues that the evidence should have been excluded because the agents lacked reasonable suspicion to stop his vehicle.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51149

We review the constitutionality of the stop, including whether there was reasonable suspicion, de novo.  *See United States v. Cervantes*, 797 F.3d 326, 328 (5th Cir. 2015).  The evidence presented at a suppression hearing is viewed in the light most favorable to the prevailing party, which is the Government in this case.  *See id.*  Factual findings, including the district court's credibility choices, are reviewed for clear error.  *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009).

In determining whether reasonable suspicion exists in the context of roving Border Patrol stops, we examine the totality of the circumstances and weigh the factors set forth in *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975).  *Cervantes*, 797 F.3d at 329.  The factors that may be considered include (1) the area's proximity to the border; (2) the characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) the driver's behavior; (6) particular characteristics of the vehicle; (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers in the vehicle and their appearance and behavior.  *Id.*

Under the totality of the circumstances, the agents had reasonable suspicion in this case to stop Carranza's vehicle.  Although the agents did not believe that Carranza's travel originated at the border, Carranza was within three miles of the border and was driving in an area and on a route known for smuggling activities.  While a stop is not justified merely by a vehicle's presence on a road that is frequently used for illegal activity, "a road's reputation as a smuggling route *adds* to the reasonableness of the agents' suspicion."  *United States v. Jacquinot*, 258 F.3d 423, 429 (5th Cir. 2001) (internal quotation marks and citation omitted).

No. 15-51149

The two agents who stopped Carranza were both supervisory border patrol agents and collectively had 24 years of experience working at the Texas-Mexico border and 27 years of experience overall.  About 30 minutes before encountering Carranza, the agents learned that sensors along the border had detected the presence of potential illegal aliens in the area whence Carranza had driven.  The agents also were aware of a report from the prior month advising them to be on the lookout for three Toyota Sequoias that were suspected of being used as scout vehicles to assist vehicles carrying illegal loads from being detected by law enforcement.

Carranza's vehicle, a Toyota Sequoia, appeared similar to the vehicles in the report and was driving in the same areas at the same hours noted in the report.  Carranza's Sequoia, which had custom shiny wheels and was extremely clean, also was atypical of the heavy duty oil field vehicles that ordinarily comprised the traffic in the area at the time he was traveling.

Carranza's behavior also supported the existence of reasonable suspicion.  When he first encountered the agents at three-way stop, he waited a noticeably excessive amount of time before proceeding, even though he arrived first and had the right of way.  When the agents thereafter followed him, he drove about 15 miles-per-hour less than the speed limit of 45 miles-per-hour.  His speed did not increase after the agents passed him, even after the speed limit became 60 miles-per-hour.  When Carranza later passed the agents because they parked to wait for him, he dramatically increased his speed.  It was reasonable for the agents to infer that Carranza's actions were attempts to evade them by distancing himself from them.  *See United States v. Samaguey*, 180 F.3d 195, 199 (5th Cir. 1999); *United States v. Nichols*, 142 F.3d 857, 868 (5th Cir. 1998); *United States v. Garcia*, 732 F.2d 1221, 1225 & n.4 (5th Cir. 1984).

3

No. 15-51149

While Carranza contends that there could have been innocent explanations for his conduct, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers." *Jacquinot*, 258 F.3d at 427-28. Considering the totality of the circumstances and the *Brignoni-Ponce* factors collectively, we are satisfied that the agents had reasonable suspicion to stop Carranza's vehicle.

AFFIRMED.