# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2025

Lyle W. Cayce
Clerk

———————

No. 24-40158

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

PHILLIP COLE,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-127-1

———————————————————————

Before JONES and OLDHAM, *Circuit Judges*, and HENDRIX, *District Judge*.[*]

PER CURIAM:[†]

Phillip Cole was convicted under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for possessing a firearm as a convicted felon. Cole moved to suppress the evidence introduced against him. Because his Fourth Amendment rights were not violated, we affirm his conviction.

———————————————

[*] District Judge of the Northern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Cole also challenges his sentence, arguing that the incorrect base offense level was applied. We agree. So we are constrained to vacate his sentence and remand for resentencing. We hasten to emphasize, however, the district court may impose the same sentence on remand.

## I

### A

On June 25, 2021, Officers Fernandez and Guzman of the Corpus Christi Police Department ("CCPD") were patrolling the "Adam district" in Corpus Christi, Texas. The Adam district is a high-crime area known for frequent drug activity and violent crime.

The officers arrived to patrol the Ranch Motel on foot around 8:00am. The owners of the motel had requested CCPD to patrol their property and arrest trespassers. The motel has a large, bright orange sign posted at its entrance that warns people against trespassing. Officer Fernandez patrolled the motel grounds almost every day and was in weekly contact with the owners of the motel. The Ranch Motel received such heavy police attention because of the frequent crime that occurs there.

A few minutes into their patrol, the officers spotted a bright green Mitsubishi Mirage parked around the back side of the motel. A man was sitting in the car alone. This raised the officers' suspicions. The rear side of the motel was a particular hot spot for drug activity, especially heavy narcotic sales. And despite Officer Fernandez's regular patrols, he did not recognize the vehicle at all.

The officers approached the vehicle and began to speak with the man sitting in the driver seat, Phillip Cole, through the open window. Officer Guzman announced himself as a police officer and asked if Cole had a room at the motel. Cole replied: "Excuse me?" Officer Guzman repeated the question.

Cole responded: "Uh, yes sir, uh right here, 127. I just texted my uh friend uh to come out." Officer Guzman then asked if Cole was picking somebody up, to which Cole said, "No, I'm staying with my friend, her name is uh uh Carmen." Before saying her name, Cole looked down at his phone. Officer Fernandez then joined the discussion, asking three questions in quick succession. "Do you have a room or not? You're not staying here then[?] This is your friend, right?" Cole simultaneously said he was picking her up. The officers then asked Cole for his identification. Cole continued to repeat that he was picking up his friend. Throughout the conversation, Cole's hands were restless. He would point to the room, turn down his radio, and grab his phone.

At this point, the officers asked Cole to step out of his vehicle and if he had any weapons on him. Cole said he only had a pocketknife. Cole stepped out of the vehicle and put his hands on the hood of the car. While Officer Guzman frisked Cole, Cole mentioned that he had just gotten out of prison for bank robbery. The officers asked Cole for his identification again, and Cole told them it was in his backpack in the car. After Cole made additional inconsistent statements, Officer Fernandez informed Cole he was being detained, and the officers placed Cole in handcuffs.

The car door was still open. When Officer Fernandez looked inside, he saw a handgun on the driver's-side floorboard. Shortly thereafter, the officers told Cole he was under arrest. CCPD later performed an inventory search of the car and found: a Glock 27 GEN 4, .40 caliber pistol; a host of ammunition; three .40 caliber Glock magazines; one Pro Mag .40 caliber drum magazine with a capacity of over 50 rounds; marijuana and synthetic cannabinoid; weight scales; and plastic baggies.

No. 24-40158

B

Cole was indicted in the United States District Court for the Southern District of Texas. The first count was for possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] The second and third counts alleged violations of the same provisions for possessing ammunition as a convicted felon.

Cole moved to suppress all evidence found in the car and derived from his encounter with the officers. The district court denied that motion. So Cole proceeded to a stipulated bench trial on the first count. The district court found Cole guilty.

The district court sentenced Cole to 84 months of imprisonment and three years of supervised release. In doing so, it explicitly adopted the PSR as written. The PSR applied a base offense level of 26 based on § 2K2.1(a)(1) of the Sentencing Guidelines. The PSR adjusted the offense level downward by three points because Cole accepted responsibility for his conduct. Cole's criminal history score of 12 put him in criminal history category V. The recommended sentencing range was thus 84–105 months of imprisonment. The district court rejected a downward variance because of Cole's "extensive," "serious," and recent criminal history. But it imposed the lowest sentence in the recommended range.

Cole timely appealed. He challenges the district court's denial of his motion to suppress. We review the legality of a *Terry* stop *de novo*, and the district court's factual findings for clear error. *United States v. Flowers*, 6

_____

[1] Cole has several prior felony convictions: (1) possession of a controlled substance (cocaine); (2) possession of a deadly weapon in a penal institution; (3) two counts of aggravated assault stemming from two stabbings; and (4) two robbery convictions stemming from two bank robberies. Cole also has numerous misdemeanor convictions, including multiple assaults.

F.4th 651, 655 (5th Cir. 2021). We construe the evidence in the light most favorable to the Government because it prevailed below. *Id.* Cole also challenges the calculation of his sentence. Because Cole did not raise this argument below, we review the district court's determination for plain error.

## II

Under the Fourth Amendment, an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion is a low bar. It "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* In determining whether there is reasonable suspicion, we consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989).

## A

Cole argues that his Fourth Amendment rights were violated because the officers did not have reasonable suspicion to seize him. Even assuming the seizure occurred when the officers first approached Cole, there was reasonable suspicion. Cole was in a high-crime area. *See Wardlow*, 528 U.S. at 124. More specifically, he was in the parking lot of a motel where trespass and drug crimes regularly occurred. Because of this, the motel had even specifically requested CCPD to regularly patrol and arrest trespassers. *See United States v. Darrell*, 945 F.3d 929, 935 n.39 (5th Cir. 2019) (indicating that a house or neighborhood with "a reputation for criminal activity" is a fact supporting reasonable suspicion).

Moreover, the car was parked around the back of the motel, a particular spot known by the officers to be a popular location for drug deals. Officer Fernandez's suspicions were heightened because he did not recognize Cole's car, despite patrolling the motel grounds almost every day. *See United States*

*v. Samaguey*, 180 F.3d 195, 198 (5th Cir. 1999) (finding a "contributing factor" to reasonable suspicion when an officer "familiar with the locals, did not recognize the driver or the car"). On top of this, Cole was sitting in the car with no apparent intention of driving away or exiting the vehicle to go inside the motel. *See Flowers*, 6 F.4th at 656 (noting that idling in a car supports reasonable suspicion); *Rucker v. Marshall*, 119 F.4th 395, 401 (5th Cir. 2024) (holding that "idling in a running car in a high crime area" contributes to reasonable suspicion). This was enough to give the officers reasonable suspicion.

Our decision in *United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014), is not to the contrary. *First*, in *Hill*, the high-crime area was an entire large county. *See id.* at 1035; *see also Flowers*, 6 F.4th at 657 (distinguishing *Hill* because "the elevated incidence of crime considered there spanned an entire county, not a single neighborhood"). The high-crime area here was much more particularized. *Second*, the car in *Hill* was parked "in plain view" near the parking lot's front entrance, not in a more suspicious spot on the back side of the property. *See Flowers*, 6 F.4th at 657 (distinguishing *Hill* because the car there "was parked in plain view in an apartment complex, a location where one would expect multiple cars to be parked, not in a suspicious spot"). *Third*, the officers in *Hill* were patrolling on their own initiative, not because they were called or had a "reason to suspect any particular criminal activity" there at the time. *Hill*, 752 F.3d at 1034. Here, the officers regularly patrolled the motel grounds because of the motel's specific requests.

We thus find that the officers had reasonable suspicion when they first approached Cole.

No. 24-40158

B

It is obvious, however, that the seizure did not occur prior to Cole being ordered out of his car.[2] Thus, his behavior prior to that point further supports the officers' reasonable suspicion to ultimately seize him.

A seizure occurs when someone submits to an officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). This occurs when a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). If the person has no intention of leaving "for reasons unrelated to the police presence," the test becomes "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quotation omitted).

Clearly not "every street encounter between a citizen and the police" constitutes a seizure. *Mendenhall*, 446 U.S. at 554. Law enforcement officers do not seize anyone "by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497 (1983). Nor do officers seize someone by merely asking for identification. *Florida v. Bostick*, 501 U.S. 429, 435 (1991).

The officers here did not seize Cole during their conversation with him prior to ordering him out of the car. Only two officers, not "several,"

---

[2] Cole argues that the Government waived this argument. We disagree. The Government's position has always been that the seizure began only after Cole stepped out of the car after being ordered to do so. *See, e.g.*, ROA.82 ("Officers Guzman and Fernandez had reasonable suspicion to detain Cole . . . *after* he exhibited nervous behavior and gave inconsistent answers to questions." (emphasis added)); ROA.83 (arguing that there was reasonable suspicion "[a]t the time Cole submitted to the officer's authority" because of Cole's behavior during questioning).

approached Cole. *See Mendenhall*, 446 U.S. at 554–55. These officers did not "summon" Cole "to their presence, but instead approached" him while he was sitting in his car with his window down. *Id.* at 555. Nor did the officers flash lights or sound sirens. They calmly approached Cole on foot. *See Michigan v. Chesternut*, 486 U.S. 567, 575 (1988). The officers then simply began to ask basic questions about why Cole was parked there, before asking for his identification. *See Bostick*, 501 U.S. at 435. They did not threaten Cole. *See United States v. Drayton*, 536 U.S. 194, 204 (2002). They did not command Cole to do anything. *See id.* They did not brandish any weapon. *See id.* They did not move in an intimidating fashion. *See id.* Nor did they block Cole's ability to move his vehicle. *See id.* In short, it is abundantly clear that this was an entirely consensual encounter that does not rise to the level of a seizure.

Thus, because Cole was not yet seized, his behavior prior to being ordered out of the vehicle further supports finding reasonable suspicion to ultimately seize him. Cole did not immediately answer if he had a room at the motel. He offered inconsistent responses about whether he was staying at the motel or merely picking up a friend. And he paused and looked at his phone before answering who he was staying with at the motel. All the while, he was fidgeting continuously. This nervous and evasive behavior bolsters the officers' reasonable suspicion. *See Wardlow*, 528 U.S. at 124.

\*

The officers clearly had reasonable suspicion to conduct a brief investigatory stop. Cole's Fourth Amendment rights were not violated. The district court was correct to deny Cole's motion to suppress the resulting evidence.

## III

Cole also argues that the district court incorrectly applied the Sentencing Guidelines in calculating his sentence. Because Cole did not raise this

objection below, we review it for plain error. To show plain error, Cole must establish that (1) the district court erred, (2) the error was "clear or obvious," (3) it "affected [his] substantial rights," and (4) it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Randall*, 924 F.3d 790, 795–96 (5th Cir. 2019) (quotations omitted).

Cole raises two specific challenges to the district court's application of § 2K2.1(a)(1) of the Guidelines. That provision sets a defendant's base offense level at 26 "if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Cole argues that neither (A) nor (B) apply here. We consider each argument in turn.

## A

Cole argues that § 2K2.1(a)(1)(A) was not satisfied because the Government did not present sufficient evidence to show that his semiautomatic firearm was compatible with the large capacity magazine found in his car. Cole's argument fails.

The phrase "semiautomatic firearm that is capable of accepting a large capacity magazine" includes, for purposes of this provision, "a magazine or similar device that could accept more than 15 rounds of ammunition," if "at the time of the offense" that magazine "was in close proximity to the firearm." U.S.S.G. § 2K2.1, Application Note 2. A .40 caliber drum magazine, with a capacity of over 50 rounds, was found in the trunk of Cole's vehicle. Cole admits that this is a large capacity magazine. He also admits that it was found in close proximity to the .40 caliber semiautomatic pistol on the floorboard of his car. But Cole claims that the Government did not prove that his firearm was "compatible" with that magazine. *See United States v. Luna-*

No. 24-40158

*Gonzalez*, 34 F.4th 479, 480–81 (5th Cir. 2022) (requiring a showing of compatibility).

The district court did not err, let alone clearly or obviously so. The PSR states that "[i]n close proximity" to Cole's firearm "was a compatible magazine drum." This finding was based on "a review of the investigative reports and interviews with ATF." True, this court has held that an unsworn statement by the Government's attorney in response to the defendant's written objections before the district court did not establish compatibility. *Luna-Gonzalez*, 34 F.4th at 480. But statements in a PSR are markedly different from litigation positions. A PSR generally "bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." *United States v. Rudolph*, 103 F.4th 356, 360 (5th Cir. 2024) (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995)). This is especially so when the PSR is based on reports and interviews with investigators. *See United States v. Longoria*, 958 F.3d 372, 375 (5th Cir. 2020) (relying on an FBI agent's statements in a PSR); *see also United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991) (The district court "may properly find sufficient reliability on a [PSR] which is based on the results of a police investigation."). In addition, the PSR here noted that the magazine drum and firearm accepted the same caliber of ammunition and were found in the same vehicle. *See United States v. Lyon*, No. 22-50360, 2023 WL 8797885, at *4 & n.6 (5th Cir. Dec. 20, 2023) (finding no clear error based on similar evidence).

Based on these facts, the district court had sufficient evidence to find compatibility.

B

Cole argues that because he did not have two prior qualifying convictions, the district court plainly erred in applying § 2K2.1(a)(1)(B).

10

The parties agree that the district court committed a clear error when it treated Cole's convictions for aggravated assault and for robbery as two separate crime-of-violence convictions. They are correct to do so. A base offense level of 26 under § 2K2.1(a)(1) requires two prior "felony convictions of either a crime of violence or a controlled substance offense." When applying § 2K2.1(a)(1), we are to "use only those felony convictions that are counted separately under § 4A1.1(a), (b), or (c)." U.S.S.G. § 2K2.1, Application Note 10. To determine when a "prior sentence," for purposes of those subsections, should be treated separately or as a single sentence, we must turn to § 4A1.2(a). *Id.* § 4A1.1, Application Note 1. As relevant here, that provision states that multiple prior sentences are "always . . . counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." *Id.* § 4A1.2(a)(2). Here, however, there was no intervening arrest between the aggravated assault and the robbery. "If there is no intervening arrest, prior sentences are counted separately unless . . . (B) the sentences were imposed on the same day." *Id.* Cole was convicted of aggravated assault and robbery on the same day. So the two convictions only count as a single crime-of-violence conviction under § 2K2.1(a)(1).

The Government, however, argues that this error is harmless because Cole has a separate felony conviction for a controlled substance offense, thus warranting the same base offense level. But a "controlled substance offense," for purposes of this provision, requires that the offense of conviction prohibit "the possession of a controlled substance . . . *with intent to manufacture, import, export, distribute, or dispense.*" *Id.* § 4B1.2(b) (emphasis added); *see id.* § 2K2.1, Application Note 1 (defining "controlled substance offense" by reference to § 4B1.2(b)). Cole's felony conviction for possession of a controlled substance did not require intent to manufacture, import,

export, distribute, or dispense.[3] As such, Cole does not have a controlled-substance-offense conviction under § 2K2.1(a).

Cole, therefore, only has one prior felony conviction of a crime of violence or a controlled substance offense. Thus, the highest base offense level he could lawfully receive is 22, not 26. *See id.* § 2K2.1(a)(3). The district court applied the incorrect guidelines range. Unfortunately, under binding precedent and the facts of this case, resentencing is required. *United States v. del Carpio Frescas*, 932 F.3d 324, 332–33 (5th Cir. 2019); *see also id.* at 333–44 (Oldham, J., concurring). Of course, the district court remains free on remand to reimpose the same sentence or any other sentence it deems substantively appropriate.

\* \* \*

The district court correctly denied Cole's motion to suppress. We thus AFFIRM the judgment of conviction. But because the district court plainly erred in applying § 2K2.1(a)(1), instead of § 2K2.1(a)(3), we VACATE Cole's sentence and REMAND for resentencing consistent with this opinion.

---

[3] Cole sold cocaine to an undercover police officer. But Cole ultimately pleaded down to mere possession of a controlled substance.