[Cite as *State v. Coleman*, 2026-Ohio-203.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30479 |
| Appellee | : | |
| | : | Trial Court Case No. 2025-TRC-0007 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| PATRICE COLEMAN | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 23, 2026, the judgment of the trial court is reversed and remanded for further proceedings.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_Mary K. Huffman_

_____
MARY K. HUFFMAN, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

OPINION

JENNIFER E. MARIETTA, Attorney for Appellant
MARC T. ROSS, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Patrice Coleman appeals from a judgment entry of conviction of one count of operating a motor vehicle while under the influence ("OVI"), which followed a no contest plea. Because the arresting officer lacked reasonable, articulable suspicion that a red-light violation had occurred, the evidence that flowed from the improper traffic stop was fruit of the poisonous tree, and the trial court erred in overruling Coleman's motion to suppress. The judgment of the trial court is reversed, and this matter is remanded for further proceedings.

**Facts and Procedural History**

{¶ 2} On January 1, 2025, Coleman was cited for OVI, a seat belt violation, and a red-light violation, and she pled not guilty. She also received an administrative license suspension ("ALS").

{¶ 3} On January 30, 2025, Coleman filed a motion to suppress. She also filed an appeal of her ALS and a motion for limited driving privileges. An ALS hearing was scheduled for March 4, 2025. The court subsequently continued the hearing and granted a stay of the suspension. The court addressed both the ALS appeal and the motion to suppress at hearing on March 20, 2025, and at the conclusion of the hearing, indicated that it would issue written decisions on each motion. The court issued a written decision overruling the motion to suppress on April 23, 2025, but did not issue a decision on the ALS appeal.

{¶ 4} On May 12, 2025, Coleman pleaded no contest to OVI. She was found guilty and sentenced to one year of non-reporting probation, community control sanctions, and a

fine of $375.00. The remaining charges were dismissed. Before addressing Coleman's assigned errors, we review the evidence adduced at the suppression hearing as well as the decision on the motion to suppress.

{¶ 5} Ohio State Highway Patrol Officer Tyler Goubeaux testified that on January 1, 2025, he was on patrol in a marked cruiser around 1:00 a.m. when he observed a gray Chevy SUV driven by Coleman on Salem Avenue in the left hand turn lane facing north. According to Goubeaux, the "straight lane turned green but the [turn] arrow stayed red and she attempted to make a left hand turn on a red arrow." He stated that after he activated his lights, Coleman's vehicle almost struck the curb on Cornell Avenue while turning.

{¶ 6} Goubeaux contacted Coleman, approaching her stopped vehicle from the driver's side. She was the sole occupant, and he noticed a very strong odor of an alcoholic beverage. Coleman provided her driver's license. She had bloodshot, glassy eyes and slurred speech, and she did not provide insurance when asked to do so. Coleman told Goubeaux that she had consumed one alcoholic beverage, and he asked her to exit her vehicle.

{¶ 7} In accordance with his National Highway Traffic Safety Administration training, Goubeaux administered three field sobriety tests to Coleman, namely the horizontal and vertical gaze nystagmus tests and the walk-and-turn test. Goubeaux was still able to smell alcohol on Coleman's person while she was outside of her vehicle. On the horizontal gaze test, he observed three clues of intoxication in each of Coleman's eyes—a lack of smooth pursuit, nystagmus at prior to forty-five degrees, and sustained nystagmus at maximum deviation. Goubeaux also observed nystagmus on the vertical gaze test.

{¶ 8} Coleman performed the walk and turn test after being given the instructions and a demonstration of the test by Goubeaux, and after acknowledging her understanding.

3

Coleman exhibited six out of eight clues of impairment on the test. Coleman almost fell during the test, and Goubeaux decided not to administer the one-leg-stand test out of concern for her safety. Based on his training and experience, Goubeaux concluded that Coleman was intoxicated due to her "running the red light, almost striking a curb, slurred speech, blood shot glassy eyes, strong odor of an alcoholic beverage, admission to drinking. The six clues on the horizontal gaze nystagmus test including two clues on the vertical gaze and then the six clues on the walk and turn test."

{¶ 9} After another officer arrived on the scene, Goubeaux read the ALS form to Coleman in the presence of that officer. Goubeaux's dashcam and body camera video were played for the court.

{¶ 10} On cross examination, Goubeaux acknowledged that Coleman was already in the intersection when he first observed her vehicle and that she had already passed the stop bar there. When asked if he could state when Coleman crossed the stop bar into the intersection, Goubeaux replied, "I cannot." He acknowledged that the intersection is large and that although Coleman was headed north, there was oncoming traffic from the south, and she had waited until all of the oncoming cars cleared the intersection before initiating her left-hand turn. The following exchange occurred at the motion hearing:

Q. All right, but if [Coleman] enters the intersection while she is permitted to do so and then the light turns red and you come upon her and you can't tell the sequence of events that occurred prior to your arrival you don't know what that left turn signal showed when she entered into the intersection. Isn't that a fair statement?

A. For the most part.

Q. Well, what's wrong with it?

4

A. Well, the light is completely red including the turn arrow on my approach. So it's –

Q. I understand that but you don't know when she actually got into the center of the intersection do you?

A. I do not.

Q. All right, and if someone actually enters the intersection and waits until traffic clears, they are still permitted to turn left are they not? If they are already in the intersection?

A. Correct.

Q. You did not see her go past the stop bar while the light was red. Is that a fair statement?

A. It's a fair statement.

{¶ 11} In overruling the motion to suppress, the court found that the "basis for the arrest was a combination of observations made by Trp. Goubeaux including running the red light, nearly striking a curb, the odor of alcohol, [Coleman's] slurred speech and glassy eyes, and [her] poor performance on the [field sobriety tests]." The court found "probable cause was present for Tpr. Goubeaux to arrest [Coleman] based upon the totality of the circumstances." The court further found:

Tpr. Goubeaux observed: 1) [Coleman] operating a vehicle 2.) [Coleman] execute a left turn while the respective traffic control light was illuminated red 3.) an odor of alcohol emanating from [Coleman's] vehicle 4.) [Coleman's] slurred speech and glassy eyes 5.) [Coleman] exhibiting multiple clues indicating impairment during the [horizontal gaze nystagmus] test 6.) [Coleman] exhibiting multiple clues indicating impairment during the walk and

turn test. As such the facts and circumstances known to Trp. Goubeaux were sufficient to cause a reasonable person to believe that [Coleman] had committed an operating a vehicle under the influence offense. The traffic stop of [Coleman] was lawful. Further, the Court finds Tpr. Goubeaux administered the [field sobriety tests] in substantial compliance with applicable [] standards.

{¶ 12} Coleman asserts two assignments of error. In her first assignment of error, she argues that the trial court erred in denying her motion to suppress.

{¶ 13} According to Coleman, there "was no reasonable basis for the traffic stop." She argues that the arresting officer did not observe her enter the intersection and that had she "entered the intersection on a green arrow, then her left turn on the red [arrow] is not a traffic violation." She argues that any alleged odor of alcohol or field sobriety test results are fruit of the poisonous tree after the improper traffic stop, and the court "erred in considering evidence obtained after the traffic stop to bolster the reason for the original traffic stop."

{¶ 14} The State responds that there "is no testimony or evidence in the record that [Coleman] entered the intersection on a green arrow." The State directs our attention to Goubeaux's dash camera video "corroborating the Trooper's observations of the violation." In reply, Coleman asserts that Goubeaux's "speculation is not reasonable suspicion." She argues that she had "no obligation to testify or put forth a single iota of evidence," and "the uncontroverted testimony of Trooper Goubeaux is that he did not observe any traffic violation by her."

**Standard of Review and Analysis**

{¶ 15} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the

6

credibility of witnesses." *State v. Burnside*, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 2019-Ohio-4210, ¶ 16. "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *State v. Isaac*, 2005-Ohio-3733, ¶ 8, (2d Dist.), citing *State v. Retherford*, 93 Ohio App.3d 586 (2d Dist. 1994). "The application of the law to the trial court's findings of fact is subject to a de novo standard of review." *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.).

{¶ 16} As noted by the Sixth District:

"The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). This type of seizure is justified if an officer has a "reasonable suspicion"—i.e., "a particularized and objective basis" to suspect—that the person stopped has broken the law. *Id*. at 60. In other words, a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed a traffic violation. *Mays* at ¶ 7-8.

*State v. Scott*, 2022-Ohio-2071, ¶ 23 (6th Dist.).

7

{¶ 17} One "type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based upon specific or articulable facts that criminal behavior is imminent or has occurred." *State v. Bullock*, 2017-Ohio-497, ¶ 7 (12th Dist.), citing *Terry v. Ohio*, 392 U.S.1 (1968). "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hairston*, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86 (1991). "An assessment of the totality of the circumstances 'does not deal with hard certainties, but with probabilities.'" *Id*., quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981). When reviewing an officer's actions, the court "must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Andrews* at 88, citing *Cortez*.

{¶ 18} "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-557 (2d Dist. 1990). "Reasonable suspicion for a *Terry* stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *State v. Tidwell*, 2021-Ohio-2072, ¶ 20, quoting *Alabama v. White*, 496 U.S. 325, 330 (1990). "'Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," . . . , that must be taken into account when evaluating whether there is reasonable suspicion.'" *Id*., quoting *White* at 330, quoting *Cortez* at 417. "The 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." (Emphasis deleted.) *State v. Batchili*, 2007-Ohio-2204, ¶ 19. The "Supreme Court has held that, while a series of events appear innocent when

8

viewed separately, taken together, they can warrant further investigation." *State v. White*, 2002 WL 63294, *2 (2d Dist. Jan. 18, 2002), citing *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989).

{¶ 19} "The derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure." *State v. McLemore*, 2012-Ohio-521, ¶ 20 (2d Dist.), citing *Nardone v. United States*, 308 U.S. 338 (1939). "The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality." *Id.*

{¶ 20} R.C. 4511.13(C)(2)(a), the basis of Goubeaux's traffic stop for the red-light violation, states, in relevant part, that vehicular traffic "facing a steady red arrow signal indication shall not enter the intersection to make the movement indicated by the arrow and . . . shall stop at a clearly marked stop line; . . . and shall remain stopped until a signal indication or other traffic control device permitting the movement indicated by such red arrow is displayed."

{¶ 21} On the other hand, R.C. 4511.13(A)(2) states that vehicles "facing a green arrow signal indication, displayed alone or in combination with another signal indication, *are permitted to cautiously enter the intersection* only to make the movement indicated by such arrow, or such other movement as is permitted by other indications displayed at the same time." Such vehicles, "including vehicles turning right or left or making a u-turn movement, shall yield the right-of-way" to other traffic lawfully using the intersection. R.C. 4511.13(A)(2)(b).

{¶ 22} Goubeaux acknowledged that Coleman was already in the intersection and past the stop line when he first observed her vehicle. He specifically testified that he did not see her cross the stop line while the light was red, and he recognized that she waited for oncoming traffic to clear the intersection before executing her left turn. Goubeaux further conceded that if Coleman had entered the intersection lawfully, a fact of which he was admittedly unaware, she was legally permitted to turn once the traffic cleared. The video upon which the State relies is grainy, unclear, and cannot overcome Goubeaux's explicit concessions regarding his observations of Coleman. Based upon the totality of the circumstances, Goubeaux lacked reasonable, articulable suspicion to initiate the traffic stop of Coleman's vehicle. Put differently, he acted upon an inchoate hunch that she had committed a red-light violation based on seeing her execute the left turn from the intersection. Evidence of the OVI offense that flowed from the improper traffic stop was fruit of the poisonous tree and subject to suppression. Coleman's first assignment of error is accordingly sustained.

{¶ 23} Coleman's second assignment of error challenges the trial court's denial of her appeal of the administrative license suspension. She argues that if the court had granted her motion to suppress, she could have established on appeal of the ALS that Goubeaux lacked reasonable cause to believe that she had violated R.C. 4511.19. The State responds that because the ALS terminated by operation of law upon Coleman's conviction, "her appeal of the ALS is moot" because there is no relief this Court can grant.

{¶ 24} An ALS "is an automatic consequence of a refusal to take a chemical test." *State v. Hoover*, 2009-Ohio-4993*, ¶* 25, citing R.C. 4511.191(B)(1). A person placed under an ALS may appeal the suspension at either the initial appearance on the charge resulting from the arrest or within thirty days after the person's initial appearance on that charge.

10

R.C. 4511.197(A). R.C. 4511.197(C) allows an ALS appeal, but this appeal is limited and will only be allowed if one or more of four conditions have been met, including whether the arresting officer "had reasonable ground to believe" that the operator violated R.C. 4511.19(A) or (B). It is true that the "registrar shall terminate a suspension of the driver's . . . license . . . imposed pursuant to division (B)(1) of this section upon receipt of notice . . . that the person has been convicted after entering a plea of no contest to, operating a vehicle in violation of section 4511.19 of the Revised Code . . . if the offense for which the conviction is had or the plea is entered arose from the same incident that led to the suspension or denial." R.C. 4511.191(B)(2).

{¶ 25} Consideration of this assigned error, however, is rendered moot by our resolution of Coleman's first assignment of error. Put differently, because the trial court erred in denying Coleman's motion to suppress, this matter is reversed and remanded for further proceedings, thereby restoring the case to its pre-plea status. If Coleman wishes to pursue an appeal of the ALS, its validity must be determined by the trial court.

## Conclusion

{¶ 26} Having sustained Coleman's first assignment of error, her conviction for OVI is reversed, and this matter is remanded to the trial court for further proceedings.

. . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.

11